IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| ELLA MAE BRAILSFORD, | ) Civil Action No. 3:06-0608-JFA-JRM |
| Plaintiff, | ) |
| vs. | ) |
| SQUARE D, A SUBSIDIARY OF SCHNEIDER ELECTRIC, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

Plaintiff, Ella Mae Brailsford ("Brailsford") filed this action on March 1, 2006. She alleges claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").[1] Defendant, Square D, a subsidiary of Schneider Electric ("Square D"), filed a motion for summary judgment on November 29, 2006. Brailsford filed a memorandum in opposition to summary judgment on April 2, 2007. Square D filed a reply on April 9, 2007.

SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316

(4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996).

## FACTS

1. Brailsford, an African-American female, was hired by Square D on May 22, 1995, as an assembler in Square D's Columbia, South Carolina facility. She worked in various assembly positions throughout her career at Square D. When the assembly line she worked on was moved to Mexico in 2004, Brailsford transferred to an assembly line position on the 221 Cradle Line. Plaintiff's Dep. 16, 35.

2. On September 10, 1997, Brailsford received a written warning for an altercation with a co-worker, Lance Tidwell. Brailsford admitted confronting Tidwell and telling him she "would whip his a**" and she would "mess him up."[2] After Tidwell complained, Bonnie Campbell ("Campbell"), a Human Resources Associate (Caucasian), met with Brailsford and reprimanded her for acting inappropriately. Plaintiff's Dep. 18, 20, 24; Campbell Aff., Para. 11.

3. On about September 15, 2004, Brailsford received a verbal warning for inappropriate behavior. The manager of the Square D cafeteria complained to Arthur "Chip" Drant ("Drant"), Square D's manager of Human Resources (Caucasian), that Brailsford created a disturbance in front of a large group of people during the morning break. The cafeteria

---

[2]She also appears to admit calling Tidwell a "f*cking b*tch" and threatening to "put her foot in his a**." Plaintiff's Dep. 24.

3

    manager claimed that Brailsford raised her voice, was disruptive in the cafeteria, and berated a cafeteria worker. Drant met with Brailsford to discuss the allegations. Brailsford stated that she did not raise her voice, but complained to other employees that the cafeteria served better food to the front office personnel than to the assembly line employees. She thought the incident was merely a misunderstanding. Drant documented the incident as a verbal warning, noting that Brailsford claimed she was "kidding around" with the cafeteria personnel. Plaintiff's Dep. 25; Defendant's Motion for Summary Judgment, Ex. 6; and Drant Dep. 13-14.

4. On September 30, 2004, Marlon Thomas ("Thomas"), a NW technician/quality liaison (African American) for the 221 Cradle Line, complained to Drant about Brailsford. Thomas claimed that Brailsford used profanity and engaged in sexually explicit behavior while at work. Thomas Dep. 13, 15, 43-44.

5. Specifically, Thomas claimed that he observed Brailsford unbutton her jeans and lower her zipper while beckoning another employee, Anthony "Tony" Thompson ("Thompson"), to "come over" and he heard Brailsford make sexually suggestive remarks. He also stated that he observed Brailsford rub her body against Thompson in a suggestive way. Thomas also claimed that he saw Brailsford sit on a work table, spread her legs apart, pat her private area, and tell Thompson to "come and get it." Thomas Dep. 44, 46-47, 52, 59, 73; Drant Dep. 18.

6. Thomas told Drant that other employees approached him about Brailsford's behavior and requested that he handle the situation to end the alleged behavior. He thought that Brailsford intimidated some of the female employees on the 211 Cradle Line and they were apprehensive about reporting her. Thomas provided the names of three employees, Darrel

       Dease (African American), Eric Fleming (African American), and Richard Hughes (Caucasian), as witnesses who were willing to come forward. Thomas Dep. 53-54, 64, 66; Drant Dep. 19.

7. Drant met with Dease, Hughes, and Flemming. These employees admitted they were upset about Brailsford's behavior and they corroborated Thomas's allegations. Drant Dep. 21, 23, 39; Drant Aff., Para. 15; Hughes Aff., Paras. 4-12; Dease Aff., Paras. 4-11.

8. Drant spoke with Thompson (African American) who also worked as an assembler on the 211 Cradle Line. Thompson stated that he had not been offended by any of Brailsford's behavior and described Brailsford is a "beautiful woman with big eyes who sometimes is misunderstood by people around her." He stated that some employees might view Brailsford's stretching exercises[3] as sexually suggestive, while others might view it as joking around. Thompson Dep. 11-12, 22, 25-27, 30-31; Drant Dep. 31.

9. Drant believed that Thompson was less than forthright, was trying to avoid the issue, and was protecting Brailsford. He also thought it was of little consequence that Thompson denied being offended and harassed because four other employees stated they had seen the alleged behavior and Square D's policies required the company to discipline employees who acted inappropriately. Drant Aff., Paras. 17-19.

10. On September 30, 2004, Brailsford was called into Drant's office with Campbell and with Brailsford's supervisor Tom Wendell (Caucasian).[4] Drant informed Brailsford that several

---

[3]Apparently, workers on the 211 Cradle Line participated as a group in certain physical exercises each day to prepare them for their work.

[4]Wendell was the manufacturing supervisor over the 211 Cradle Line.

5

        employees accused her of making inappropriate comments and gestures towards Thompson. Brailsford denied engaging in any appropriate conduct. Brailsford Dep. 32, 55, 56, 140; Drant Dep. 25.

11. At the end of the meeting, Drant sent Brailsford home pending Square D's investigation. Drant Dep. 26.

12. Square D's "Corrective Action Procedure" outlines the steps for discipline when an employee violates Square D's policies or its "Code of Conduct." The procedure provides that employees may be terminated without prior corrective warning. Defendant's Motion for Summary Judgment, Ex. 16.

13. Square D's Code of Conduct provides that when employees do not meet workplace expectations, the Corrective Action Procedure will be followed and termination of employment may result. The Code of Conduct policy prohibits actions including discrimination or harassment based on sex; acting inappropriately in the work place; and threatening, intimidating, or interfering with other employees in the performance of their duties. Plaintiff's Dep., Ex. 20; Defendant's Motion for Summary Judgment, Ex. 15.

14. Another Square D policy, titled "Harassment and Other Inappropriate Conduct," provides that any employee who is subjected to harassing conduct or who observes conduct which violates the policy must report it to Human Resources. The policy defines harassment to include sexually suggestive comments; repeated sexual flirtation, advances, or propositions; subtle pressure for sexual activities; and physical contact such as patting, pinching, grabbing, or brushing against another's body. The policy provides that an employee who engages in

such prohibited conduct may be disciplined, up to and including immediate termination. Defendant's Motion for Summary Judgment, Ex. 14.

15. Drant, Wendell, Plant Manger Jim McGinnity (Caucasian), and Manufacturing Manager Joe Meyers (Caucasian) investigated the matter, reviewed Square D policies, and decided to terminate Brailsford's employment. Drant Dep. 27, 41.

16. Later on September 30, 2004, Campbell called Brailsford and told her that her employment was terminated. Square D sent a letter that same day informing Brailsford that she was terminated under Square D's Code of Conduct policy. The letter further provided that the "company fully investigated the allegations made by several witnessing employees and took appropriate action based on [Square D's] corrective action procedure." Drant states that the corrective action procedure includes the Code of Conduct and the harassment policy. Plaintiff's Dep. 32; Drant Dep. 53-54; Defendant's Motion for Summary Judgment, Ex. 8.

17. On October 4, 2004, Brailsford requested the use of Square D's Open Door Policy[5] to grieve her termination. Brailsford Dep. 57. Drant and McGinnity met separately with Brailsford. Drant Dep. 29.

18. Brailsford denied making the comments and later asked that Drant and McGinnity talk to the rest of the workers on the 211 Cradle Line and those employees who saw her on her cigarette breaks because they would be able to confirm her innocence. Drant declined to do so and interviewed Thomas again. Brailsford Dep. 67, 68.

---

[5]This policy provides a preference for an employee discussing problems first with his or her supervisor and if not satisfied, progressively through supervisory channels, the Human Resources Department, and the Plant Manager. It also provides that an employee may consult directly with any management person, the Human Resources Department, or the Plant Manager. Defendant's Motion for Summary Judgment, Ex. 17.

7

19. On March 15, 2005, Plaintiff filed a Charge of Discrimination with the South Carolina Human Affairs Commission and the Equal Employment Opportunity Commission ("EEOC"). Plaintiff alleged discrimination based on race and sex. Defendant's Motion for Summary Judgment, Ex. 9.

20. The EEOC issued a right-to-sue notice in December 2005. Defendant's Motion for Summary Judgment, Ex. 11.

## DISCUSSION

Brailsford alleges that she was subjected to disparate discipline and terminated based on her race in violation of Title VII. Complaint at 2. Square D contends that it is entitled to summary judgment because: (1) Brailsford cannot establish a prima facie case of racial discrimination; (2) Square D had a legitimate, non-discriminatory reason for terminating Brailsford; (3) and Brailsford has presented no evidence that Square D's reason for terminating her is pretext for racial discrimination.

Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may proceed under ordinary principles of proof using direct or indirect evidence, or, in the absence of direct proof of a defendant's intent to discriminate, a plaintiff can employ the scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973) to establish a prima facie case of discrimination by offering proof that:

    (1)    he is a member of a protected class;

      (2)      he was qualified for his job and his job performance was satisfactory;

      (3)      he was subjected to an adverse employment action; and

      (4)      the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination.

See Gairola v. Commonwealth of Virginia Dep't of General Serv., 753 F.2d 1281, 1286 (4th Cir.1985); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir.), cert. denied, 516 U.S. 870 (1995); McDonnell Douglas, 411 U.S. at 802. McDonnell Douglas provides that, once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for the challenged employment action. McDonnell Douglas, 411 U.S. at 802. If the employer provides the required evidence of a non-discriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment action, but were a pretext for discrimination. Id. at 804; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

    In the absence of direct proof of a defendant's intent to discriminate, a plaintiff can employ the scheme outlined in McDonnell Douglas to establish a prima facie case of disparate discipline by offering proof that:

      (1) he is a member of a protected class under Title VII;

      (2) the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class; and

      (3) he suffered more severe discipline for his misconduct as compared to those employees outside the protected class.

See Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir.), cert. denied, 472 U.S. 1021 (1985).

    A.      Prima Facie Case

Square D has utilized the framework for a disparate discipline case, while Brailsford has used the general framework discussed above. Under either framework, Brailsford fails to establish her prima facie case, as discussed below.

    (1)    Disparate Discipline Framework

The parties do not dispute that Brailsford has established the first prong, that she is a member of a protected class. Square D contends that Brailsford fails to show that the prohibited conduct of which she engaged was comparable in seriousness to misconduct of any employee outside the protected class and that the disciplinary measures enforced against her were more severe than those enforced against any other employee.

Brailsford appear to contend that she has met the second and third prongs of this framework because Joseph Wilson ("Wilson"), a Caucasian male, engaged in prohibited conduct which was comparable to the misconduct of which she is accused, but he was not disciplined for his actions.[6] In April 1995 (prior to Plaintiff's start as an employee of Square D), a temporary employee alleged that Wilson unzipped his pants in her presence. Brailsford admits that she has no first hand knowledge of Wilson's alleged misconduct, no knowledge of whether the company could substantiate the allegations against him, and no knowledge about the veracity of the accuser's allegations against Wilson. Plaintiff's Dep. 72. Drant provides that Wilson denied the alleged misconduct, the accuser insisted that Square D not take any against Wilson, and there were no witnesses to the alleged incident. He also states that Wilson was not accused of any other

---

[6]In its motion for summary judgment, Square D discusses two other Caucasian employees (Wendell Maxwell and "Dale") who Brailsford claimed (in her deposition) received more favorable discipline for similar conduct. Square D contends that these employees were not similarly situated to Brailsford. Brailsford does not appear to challenge this in her memorandum in opposition to summary judgment.

10

misconduct. Drant states that because the only employee who complained about Wilson was unwilling to press her complaint and was indecisive about the incident, he did not feel that the allegations could be substantiated. He states, however, that Wilson received a written counseling concerning the alleged incident. Drant Aff., Paras. 37-39.

Brailsford fails to establish the second and third prongs of her prima facie case because she fails to show that she was similarly situated to Wilson. In making a comparison of a plaintiff's treatment to that of employees outside the protected group, a plaintiff must show that the comparables are similarly situated in all relevant respects. See Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Cir. 1992); see also Lanear v. Safeway Grocery, 843 F.2d 298 (8th Cir. 1988)(plaintiff must prove that he and non-protected employee were similarly situated in all respects and the other employee's acts were of comparable seriousness to his own); see also Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494 (4th Cir. Dec. 7, 1998)(unpublished)(employees similarly situated only if they "dealt with the same supervisor, [were] subject to the same standards and...engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (citations omitted)), cert. denied, 527 U.S. 1036 (1999); Smith v. Stratus Computer, Inc., 40 F.3d 11 (1st Cir. 1994)(in disparate treatment cases, employees must be similar in "all relevant aspects" including performance, qualifications, and conduct)(citation omitted), cert. denied, 514 U.S. 1108 (1995); see also Bogren v. Minnesota, 236 F.3d 399, 405 (8th Cir. 2000)(finding that probationary and non-probationary employees are not similarly situated), cert. denied, 534 U.S. 816 (2001).

Here, Wilson was accused of only one incident of misconduct, while Brailsford had earlier been disciplined for as to an altercation with a co-worker and for inappropriate behavior in the

11

cafeteria.  See Thomas v. Kmart Corp., 2006 WL 2802266 (W.D.Ky. 2006)(Plaintiff cannot be considered similarly situated to other employees in terms of the nature and/or seriousness of the misconduct even if all employees violated the same policy when plaintiff allegedly engaged in not one, but two separate acts of misconduct, plaintiff's conduct was therefore more serious than that of other employees), Roland v. United States Postal Service, 200 Fed. Appx. 868 (11th Cir. 2006)(unpublished)(finding plaintiff's conduct more egregious than comparator's conduct which must be "nearly identical" in order to keep courts from second guessing employer's reasonable decision).  Additionally, Brailsford's conduct was allegedly performed in front of numerous other employees and four employees complained of Brailsford's alleged inappropriate language and conduct, while there were no witnesses (other than the accuser who would not press the case) to Wilson's alleged conduct.  See Wright v. Murray Guard, Inc., 455 F.3d 702, 713 (6th Cir. 2006)(finding it was within employer's discretion to credit the accusers over the plaintiff).  Further, the conduct of Brailsford, as it allegedly occurred in front of a number of employees, offended or was potentially offensive to more than just the alleged victim.[7]  Finally, contrary to Brailsford's allegation, Drant states that Wilson was disciplined for the alleged incident, by being issued a written counseling.

(2)     General Termination Framework

---

[7]Since Brailsford's termination, Square D has also obtained affidavits from two additional employees.  Curtis Nelson and Evelyn Ashley claim that Brailsford repeatedly made inappropriate comments of a sexual nature, used vulgar language, and touched herself inappropriately.  Nelson Aff., Paras. 6-8; Ashley Aff., Paras. 6-8, 10.

Under this framework, the parties do not appear to dispute that Brailsford is a member of a protected class and that she suffered the adverse action of termination. Brailsford claims that she has established the second prong (that she was qualified for her job and her job performance was satisfactory) because she did not receive any write-ups or other disciplinary actions for poor performance.[8] Square D has not addressed this prong, so it is assumed for purposes of summary judgment that Brailsford has met this prong of her prima facie case.

In dispute is whether Brailsford met the fourth prong, that the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination Brailsford claims that she has established the last prong because: (1) Square D stated several contradictory reasons for her termination; (2) she denies the alleged actions, she claims that Thompson denies that Brailsford harassed him, and Thomas stated that he was never personally offended by her actions; (3) there have been other issues of discrimination raised within the company including that African-Americans employees were treated differently during RIFs and the promotion process and that the assembly workers were mostly African American, while management and the front office consisted of Caucasian employees; and (4) the investigation was incomplete as Drant had already made up his mind about the incident.

Brailsford fails to establish the fourth prong of her prima facie case. Contrary to Plaintiff's argument, the reasons given by Square D for terminating her (although not always containing the exact same words) are consistent. The Personnel Change Notification Form listed misconduct as the grounds for Brailsford's termination. Plaintiff's Opp. Mem., Ex. 5. Inappropriate behavior in

---

[8] Brailsford claims that her written counseling statement and verbal warning concerned issues not related to performance.

violation of the Company's Code of Conduct is listed as the reason for Brailsford's termination on her Termination Notice. Plaintiff's Opp. Mem., Ex. 2.[9] Brailsford acknowledged that one of the prohibited forms of conduct under Square D's Code of Conduct is misconduct. Plaintiff's Dep. 166. She also admits that misconduct under Square D's policies includes inappropriate behavior. Plaintiff's Dep. 167.[10]

Brailsford also claims that Drant failed to conduct a sufficient investigation because he did not interview other people who worked on the 211 Cradle Line and did not speak with her co-workers who engaged in breaks with her. She also claims that Drant made up his mind what to do before investigating. Even if Brailsford can prove that the investigation is insufficient or that the conclusion was incorrect, she has not shown that her termination occurred under circumstances that raise a reasonable inference of unlawful discrimination. See Johnson v. Ready Mixed Concrete Co., 424 F.3d 806 (8th Cir. 2005)(the difficulty with arguing that an investigation was done poorly is not only must the employer be shown to have been incorrect in its conclusion, but it must be shown that the employee did not really believe its conclusion per the investigation).

---

[9] Although Plaintiff alleges that the reason for termination given to the Employment Security Commission was insubordination, she has presented only her own hearsay testimony to support her claim. She alleges that an employee of the unemployment office told her that Campbell informed the unemployment office that Brailsford was terminated for insubordination. Plaintiff's Dep. 136. The Employment Security Commission documentation referred to by Brailsford only indicates that Square D did not timely provide information to support any misconduct. Brailsford was unable to identify where in the Employment Security Commission documents the word insubordination appeared. Plaintiff's Dep. 169.

[10] In her opposition memorandum, Brailsford states that Square D told counsel that Brailsford was terminated for violating the company's sexual harassment policy. Plaintiff's Opp. Mem. at 5. She has not submitted materials to substantiate this and even if violation of the sexual harassment policy was the reason given, it would not be inconsistent as sexual harassment is also characterized as misconduct under Square D's policies.

Brailsford claims that Drant made up his mind prior to investigating because in cases where Square D employees were accused of similar misconduct, Caucasian employees were not terminated, but African- American employees were terminated. Specifically, she claims that Wilson and another Caucasian employee, Wendell Maxwell ("Maxwell"),[11] were not terminated, but African American employees Willie Haggwood ("Haggwood"),[12] Duane Hall ("Hall"),[13] and Noel Browman ("Browman")[14] were terminated. Brailsford, however, fails to show that the Caucasian employees were similarly situated to the African-American employees who were terminated. Maxwell did not work in the Columbia facility and was not accused of any physical acts or multiple acts. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 567-568 (2d Cir. 2000)(engaging in physical conduct cannot

---

[11] Maxwell was the advance manufacturing manager in Square D's Asheville, North Carolina plant. He occasionally worked on projects at Square D's Columbia, South Carolina facility, but was never assigned there full time. In October 2002, Square D disciplined Maxwell with a written warning for making an inappropriate comment to a female employee while he was at the Columbia facility. Drant Aff., Paras. 33-35; Plaintiff's Dep. 173.

[12] Haggwood was terminated after his third violation of Square D's Sexual Harassment Policy. He received a written counseling for violating the Sexual Harassment Policy on March 10, 1993, after admitting making inappropriate sexual comments to a female employee. He was verbally counseled on August 15, 1995, for again violating Square D's Sexual Harassment Policy. On May 14, 1996, he was terminated after Square D investigated allegations that he made inappropriate sexual comments to a female employee, supported by other employees' testimony that Haggwood made inappropriate comments to them as well. Drant Aff., Paras. 42-45.

[13] Hall was terminated for continued, unwelcome sexual advances. In October 2002 a female African-American employee alleged that Hall had been harassing her since 2002, engaging in such conduct as whispering in her ear, kissing her on the neck, grabbing her, and commenting on wanting to be with her sexually. Hall allegedly told other employees about his behavior and claimed he was sexually involved with the woman who complained. When Square D investigated the incident, at least two employees reported witnessing Hall's behavior. Drant Aff., Paras. 46-47.

[14] Browman was terminated for looking at inappropriate materials on his work computer. His actions were observed by two female employees and reported to Human Resources. Browman admitted viewing a webpage during work hours which showed scantily clad women. After an investigation, Square D found evidence of the alleged misconduct and terminated Browman's employment. Drant Aff., Paras. 50-52.

be compared to a co-worker's verbal attack). Haggwood and Hall were terminated for multiple incidents of sexual misconduct, while Maxwell and Wilson were only accused of one incident each of misconduct. Browman was terminated for viewing pornographic materials on his computer, conduct he admitted and which was reported by several witnesses. Brailsford admitted that Haggwood's behavior was not similar to Wilson's behavior as Haggwood was terminated after he received two separate warnings about his conduct and continued to engage in the same conduct. Plaintiff's Dep. 185. Haggwood's conduct was different from Maxwell's conduct. Maxwell had only one, unsubstantiated allegation made against him. Haggwood also admitted that he made the comments. Drant Aff., Paras. 34, 45.

Brailsford claims that the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination because she denied that the alleged incidents occurred, she claims that Thompson denied that the incidents occurred, and Thomas stated that he was not harassed by Brailsford and was not offended by the conduct. Here, however, Brailsford has not shown that Square D did not have a reasonable belief that the conduct occurred based on the reports of Thomas, Dease, Flemming, and Hughes. Further, she fails to show that the four employees who complained about her conduct were unworthy of belief or that their reports were motivated by any type of racial animus.

Brailsford claims that she has met the fourth prong of her prima facie case because she testified and she claims that Drant confirmed that there have been other issues of discrimination raised within the company. Specifically, she claims that African Americans were treated differently during RIFs and during the promotion process and Drant stated that the assembly workers were mostly African American, while management and the front office personnel were Caucasians.

Brailsford has not asserted a failure to promote claim or alleged that she was subjected to a reduction in force. Additionally, she has presented no evidence that such alleged disparate treatment was ever substantiated.

        (2)        <u>Legitimate, Non-discriminatory Reason/Pretext</u>

Even if Brailsford could establish her prima facie case, Square D has articulated a legitimate, non-discriminatory reason for its actions, that it believed Brailsford had engaged in inappropriate conduct. Brailsford claims that the articulated reason for her termination is pretextual because: (1) Square D claims that four employees complained about her conduct, but only Thomas actually complained about it; (2) the investigation was incomplete; (3) she denied performing the alleged acts and two of her co-workers, Michael Walker ("Walker") and Benjamin Rogers ("Rogers") have now testified that they never witnessed Brailsford act inappropriately or sexually harass anyone; and (4) Square D has a history of discriminating against African-American employees.[15]

Contrary to Brailsford's assertion that Deese, Flemming, and Hughes never specifically complained about her behavior, Drant testified that these employees complained about Brailsford's conduct when he interviewed them. Drant Dep. 67. Both Hughes and Dease state that they were offended by Brailsford's conduct. Hughes Aff., Para. 12; Dease Aff., Paras. 9 and 11.

---

[15]Brailsford also argues that she has shown pretext because Wilson was treated better than she was treated. As discussed above, Brailsford fails to show that Wilson was similarly situated to her.

17

Brailsford fails to show pretext based on her own denial or the statements of Walker[16] or Rogers.[17] Although Walker and Rogers testified that they never saw Brailsford's alleged harassing conduct, Brailsford has presented nothing to dispute that Thomas, Fleming, Hughes, or Dease did not witness her alleged conduct.

The question, however, is not whether the alleged conduct occurred, but whether Square D was motivated by racial animus. See Jiminez v. Mary Washington Coll., 57 F.3d 369, 383 (4th Cir. 1995)("The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment"); Medina-Munoz v. R. J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990)(ADEA case)("[i]t is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real [and unlawful] motive" of discrimination).

Additionally, Brailsford fails to show that any lack of thoroughness in the investigation is pretextual. See Rivera-Aponte v. Restaurant Metropol # 3, Inc., 338 F.3d 9 (1st Cir. 2003)(ADEA)(stating that whether a termination decision was hastily done does not matter as long as the decision was not the result of discriminatory reasons); Forrester v. Rauland-Borg Corp., 453 F.3d 416, 419 (7th Cir. 2006)(male employee fired for sexual harassment could not show pretext by claiming that the investigation was shoddy, honest mistake is not enough to show pretext). She has,

---

[16] Walker testified that he worked two stations down from Brailsford, but his back was generally to her so he did not see her all day. He stated that while he worked there he never saw Brailsford make any inappropriate gestures towards Thompson or anyone else. Walker Dep. 10-13.

[17] Rogers testified that he typically saw Brailsford during smoking breaks and did not see her make any inappropriate gestures toward anyone at Square D. Rogers Dep. 7-8.

however, presented no evidence that her accusers' actions or the decision to terminate her was motivated by discriminatory animus. Further, she has not shown that Square D did not believe its conclusion. See Holston v. Sports Auth., Inc., 136 F.Supp.2d 1319 (N.D.Ga. 2000)(no violation of Title VII or 42 U.S.C. § 1981 to terminate an employee after conducting an investigation where the employer had a good faith basis for believing the employee had violated work rules); Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999)(the relevant inquiry is not whether the employer's reasons were wise, fair, or correct, but whether the employer honestly believed those reasons and acted in good faith upon those beliefs).

Brailsford claims that Square D's articulated reason for her termination is unworthy of credence or is false because Square D knew that Plaintiff had not done the things she was accused of because she denied the actions and Thompson said the inappropriate acts never happened. This argument, however, ignores that four other employees told Drant about her alleged actions. "It is not enough for the Plaintiff to simply assert that the acts for which she was terminated did not occur." Billups v. Methodist Hosp. of Chicago, 922 F.2d 1300, 1304 (7th Cir. 1991). "[E]ven if an employer fires an employee based upon a mistaken belief, the employee still must offer some evidence that racial animus was at the root of the termination." Arnold v. Nursing & Rehab. Ctr. at Good Shepard, 471 F.3d 843, 847 (8th Cir. 2006).

Brailsford also appears to allege that she has shown pretext based on what she perceives as a history of Square D discriminating against African-American employees. See Plaintiff's Opposition Memorandum at 12. She has, however, presented no evidence, other than her own belief, that there was such a history of discrimination.

## CONCLUSION

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 17) be granted.

    Respectfully submitted,

    s/Joseph R. McCrorey
    United States Magistrate Judge

May 16, 2007
Columbia, South Carolina